**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| **PETER NYACHIRA, on behalf of himself and all other similarly situated persons,** | |
| **Plaintiffs,** | Case No. _____ |
| **vs.** | **JURY TRIAL DEMANDED** |
| **NEW PRIME, INC.,** | |
| **Defendant.** | |

## COMPLAINT

### I.    INTRODUCTION

1.    This is an action brought on behalf of individuals who have worked for Defendant New Prime, Inc. (hereinafter "Prime" or "Defendant") as truck drivers and have been subject to the unlawful practices described herein, namely nonpayment of wages and minimum wages, in violation of state and federal law.  As set forth in more detail below, the named plaintiff brings this action on behalf of himself and all other similarly situated individuals and seeks recovery of all unpaid wages and minimum wages.  Plaintiff also seeks liquidated damages, interest, costs and attorneys' fees, and all other relief to which he and other similarly situated individuals are entitled.

2.    First, Prime has failed to pay truck drivers all minimum wages to which they are entitled for orientation time, in violation of the federal Fair Labor Standards Act (FLSA) and in violation of the Missouri Minimum Wage Law, Mo. Rev. Stat. § 290.500, *et seq*.

3.    Second, Prime has failed to pay truck drivers all minimum wages to which they are entitled for over-the-road training, in violation of the FLSA.

1

4.      Third, Prime has failed to pay drivers at least the federal minimum wage for all hours worked as over-the-road truck drivers, in violation of the FLSA.

5.      Fourth, Prime has failed to pay wages free and clear, in violation of the FLSA. Plaintiff seeks recovery of all unpaid wages and unlawful deductions.

## II.     PARTIES

6.      Plaintiff Peter Nyachira is an adult resident of Pittsburg, Kansas.  He attended Defendant's orientation and training program and drove for Defendant from approximately October 2020 to January 2021.  He is an "employee" of Defendant within the meaning of the FLSA.

7.      For the FLSA claims, Plaintiff brings this action on behalf of himself and all similarly situated individuals who may choose to "opt in" to this action pursuant to the FLSA, 29 U.S.C. § 216(b).  The claims under the FLSA meet the requirements for collective action certification set forth in 29 U.S.C. § 216(b).

8.      Pursuant to 29 U.S.C. § 216(b), named Plaintiff Peter Nyachira consents to sue as a plaintiff under the Fair Labor Standards Act.  His consent to sue form is attached as **Exhibit 1**.

9.      Plaintiff Peter Nyachira and all others similarly situated are individuals covered by the FLSA because they engaged in commerce or in the production of goods for commerce.

10.     Plaintiff Peter Nyachira and all others similarly situated are "employees" within the meaning of the Missouri Minimum Wage Law, Mo. Rev. Stat. § 290.500.

11.     For the Missouri minimum wage claim, Plaintiff Peter Nyachira brings this action on behalf of all similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The proposed class meets the requirements of Rule 23 of the Federal Rules of Civil Procedure for class certification.

12.     Defendant New Prime, Inc. is a Nebraska corporation that has its corporate headquarters at 2740 North Mayfair Avenue, Springfield, Missouri, and can be served via its registered agent, Steve Crawford, at that same address. Defendant employs individuals (including Plaintiff Peter Nyachira) as truck drivers.  Defendant New Prime, Inc. has revenues in excess of $500,000 per year and has employed two or more persons, including the named Plaintiff, who handled and worked on materials which had been moved in interstate commerce.  Defendant New Prime, Inc. is an "employer" of Plaintiff Peter Nyachira and other similarly situated drivers within the meaning of the FLSA and the Missouri Minimum Wage Law.

## III.    JURISDICTION AND VENUE

13.     Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because this case arises under the laws of the United States.  Specifically, this action arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

14.     The Court also has jurisdiction over the claims brought under the laws of Missouri pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which the named plaintiff is a citizen of a state different from the Defendant.

15.     This Court also has supplemental jurisdiction for all claims asserted under the Missouri state law pursuant to 28 U.S.C. § 1367 because these claims are part of the same case and controversy as the FLSA claims, the state and federal claims derive from a common nucleus of operative facts, the state claims will not substantially dominate over the FLSA claims, and exercising supplemental jurisdiction would be in the interests of judicial economy, convenience, fairness and comity.

16.     The United States District Court for the Western District of Missouri has personal

3

jurisdiction because Defendant is registered to do business in this State and has its principal place of business located in Springfield, Missouri.

17.     Additionally, Defendant regularly conducts business within this District, including hiring and employing drivers to work for Defendant in this District.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant conducts business and can be found in this District, and the causes of action set forth herein have arisen and occurred in this District.

## IV.     FACTS

### A.     Facts relating to Prime's corporate structure

19.     Defendant operates as a trucking company.

20.     Defendant maintains a principal office, corporate headquarters, and driver terminal in Springfield, Missouri.

21.     Policies concerning driver recruiting, training, classification, and compensation are set by Defendant's executives and managers in the Springfield, Missouri headquarters.

22.     On information and belief, Defendant's payroll department, which is responsible for issuing paychecks and W-2 forms to its company drivers, is located in Springfield, Missouri.

23.     Defendant's executives and managers based in Springfield, Missouri oversee all Defendant's departments.

### B.     Facts relating to unpaid minimum wages during orientation, over-the-road training, and team driving

24.     Defendant recruits individuals to work as truck drivers.

25.     Defendant requires individuals to attend orientation for several days prior to beginning truck driving for Defendant.

4

26.     The orientation sessions consist of approximately two to three days of computer-based training and some training on Defendant's trucks.

27.     The orientation sessions occur in various facilities owned and/or operated by Prime, including facilities in Springfield, Missouri, Salt Lake City, Utah, and Pittstown, Pennsylvania.

28.     The orientation sessions are unpaid.

29.     The individuals attending orientation are employees of Defendant during orientation.

30.     Drivers often sign contracts to drive trucks for Defendant during orientation.

31.     The orientation program is conducted by Defendant's employees and agents and uses materials developed by Defendant.

32.     The substance of the orientation program includes learning about and being trained on Defendant's policies, procedures, and systems.

33.     Defendant's policies and procedures are distributed to drivers at orientation.

34.     Drivers complete new hire paperwork for Defendant at orientation.

35.     Orientation also includes a skills assessment and a pre-employment drug screen.

36.     At the end of orientation, drivers get their driver IDs, meet with their managers and/or trainers, and typically receive their initial driving assignments.

37.     The drivers are expected to continue working for Defendant as a truck driver after completion of orientation.

38.     Plaintiff Nyachira attended orientation in Springfield, Missouri and was not paid for orientation.

39.     After orientation, many drivers are required to undergo over-the-road training.

5

40.     This over-the-road training consists of approximately two to four weeks of truck driving, with a trainer in the passenger seat.

41.     During over-the-road training, the drivers are driving, picking up and delivering loads, and doing everything they would do as a truck driver for Defendant, with a trainer in the passenger seat.

42.     Drivers are not paid for the over-the-road training.

43.     Defendant offers drivers an advance of $200 per week for the over-the-road training, but the $200 is not wages; the $200 is deducted from drivers' subsequent earnings for Defendant.

44.     Plaintiff Nyachira did his over-the-road training, after having received his learner's permit for his CDL license, for approximately three weeks in October 2020.

45.     During this time, Plaintiff Nyachira picked up and delivered loads for Defendant and otherwise did everything that Defendant's drivers do.

46.     Plaintiff Nyachira was not paid for this over-the-road training.

47.     The orientation and over-the-road training primarily benefit Defendant, because, *inter alia*, it prepares drivers to begin driving for Defendant, trains them in Prime-specific policies and procedures, introduces them to important Prime managerial employees, and assigns them their initial driving jobs, etc.

48.     After over-the-road training, drivers typically obtain their CDL licenses and become drivers for Defendant.

49.     After obtaining their CDLs, Plaintiff Nyachira and other similarly situated truck drivers were required to continue their training by "team driving" with a more seasoned driver, for approximately 40,000 miles, for several more months.

50.     The team driving phase is the most profitable phase for Defendant and critical to its operations. Requiring employees to work as a part of a team for tens of thousands of miles (at significantly reduced pay) is of a great benefit to Defendant, in that drivers are subject to limitations on the amount of driving time permitted under Department of Labor regulations. Having two drivers available to drive increases the speed in which deliveries can be made. For example, if the drivers are not allowed to run as a team, the senior driver/training instructor must remain on duty and sit in the passenger seat, which means that the truck can only "perform" at the level of a solo driver. In a team driving situation, the truck is able to be moving no less than 22 hours per day.

51.     While team driving for Defendant, Plaintiff Nyachira and other drivers typically work seven days per week.

52.     While employed as team drivers, these drivers are "on duty" for 24 hours a day, for days on end, due to the nature of long-haul trucking, which is compensable work for the Defendant under Department of Labor regulations.  This work includes, for example: (1) driving the truck for approximately nine to thirteen hours a day; (2) remaining in the truck while the truck is moving so that they can assist the driver in transporting the cargo (or simply to be available to drive if necessary), and in navigation and reporting on traffic conditions, as well as spending time in the sleeper berth so they can maximize driving time under the U.S. Department of Transportation hours-of-service rules; (3) waiting for cargo to be loaded or unloaded while in the truck or its immediate vicinity; (4) performing inspections of the truck; (5) fueling up the truck and performing routine maintenance; (6) remaining in the vicinity of the truck to help protect Defendant's and its customers' property; and (7) remaining inside the truck when stopped to log time in the sleeper berth and to help protect Defendant's and its customers' property.

53.     Defendant pays team drivers mileage-based pay with a minimum weekly wage payment of $700 (before deductions).  Defendant compensates drivers for the non-driving time at $0 per hour, which violates the FLSA.

54.     Under the FLSA, however, truck drivers are entitled to receive at least the federal minimum wage for every hour worked. *See* 29 U.S.C. § 206(a). "Under certain conditions an employee is considered to be working even though some of his time is spent in sleeping or in certain other activities." 29 C.F.R. § 785.20.

55.     During the time Plaintiff Nyachira was employed by Defendant, and like the other similarly situated truck drivers, Plaintiff was away from his home, on company duty for more than 24 hours at a time and for days on end.  Defendant failed to pay Plaintiff and all other similarly situated truck drivers for all the time that they worked, including but not limited to (a) time spent in the sleeper berth and/or passenger seat of the truck when driving as a team, (b) time when the truck is stopped, but drivers remain responsible for responding to communications from dispatch, monitoring the safety and security of their trucks and loads, and otherwise complying with Prime policies, and (c) on-call time while waiting for dispatch to assign the driver(s) another load.

56.     Additionally/alternatively, the weekly wages that team drivers receive do not always adequately compensate them for all compensable hours at the federal minimum wage.

57.     Defendant's compensation to Plaintiff Nyachira, and other similarly situated individuals is also not paid free and clear.

58.     Specifically, Defendant requires drivers to sign a training contract, which provides that, if they do not drive for Defendant for at least twelve continuous months, they are required to pay $4,759.38 to Defendant.

59. Defendant does not pay wages free and clear to drivers who do not drive for Defendant for at least twelve continuous months, because Defendant seeks money from those individuals after the termination of their employment.

60. Defendant's efforts to collect these monies violate the FLSA, because the wages have not been paid free and clear.

61. Also, to the extent that Defendant receives monies from drivers who have not driven for Defendant for at least twelve continuous months (whether through paycheck deductions or post-employment collections), that constitutes unlawful deductions from wages in violation of the FLSA.

62. For example, Plaintiff Nyachira's employment at Defendant was terminated in January 2021.

63. Though Defendant terminated Plaintiff Nyachira's employment involuntarily, Defendant immediately began collection efforts against Plaintiff Nyachira, aggressively seeking payment from Nyachira of $4,759.38.

64. Under the FLSA, Defendant is required to pay Plaintiff and other truck drivers minimum wages for all work they perform.

65. Defendant has failed to compensate Plaintiff and other truck drivers for all hours worked during orientation and over-the-road training at the federal minimum wage.

66. Defendant has also failed to compensate Plaintiff and other truck drivers for all hours worked as team drivers at the federal minimum wage and has failed to pay wages free and clear.

67. Defendant's violations of the FLSA, as described herein, are willful and in reckless disregard for its employees' rights under the FLSA.

9

### C.      Prime's post-employment collection of monies

68.      Defendant's training contract with drivers states: "In the event trainee fails to complete the Training Program, and/or discontinues driving for PRIME in either an employee or independent contractor capacity within twelve months of program completion, trainee's severance from PRIME shall be deemed premature."

69.      The contract goes on to state: "It is understood that Training Program will, in the event of Trainee's premature breakage from the Training Program, assess and enforce against Trainee the full program fee schedule and finance charges totally $4,759.38."

70.      The contract does not define or further explain what constitutes discontinuation of driving for Defendant or what "premature breakage" means.

71.      The training contract is an adhesion contract, presented to drivers on a take-it-or-leave it basis, with no option to negotiate or consider its terms.

72.      In fact, the training contract is presented to drivers on a computer, and drivers are expected to sign it on the computer. They are not given a copy of the training contract to review or consider, nor are they given copies of the signed contract.

73.      A reasonable interpretation of the training contract is that a driver would owe the money to Defendant if the driver chooses to separate from Defendant before the twelve months have elapsed.

74.      However, Defendant seeks to collect the money from drivers even when Defendant is the one choosing to discontinue the relationship, regardless of the reason for the discontinuation.

75.      For example, Defendant discontinued the relationship with Plaintiff Nyachira, and it did not give him the opportunity to continue driving for the full twelve months.

76.     Nevertheless, two weeks after his employment was terminated, Defendant began sending Plaintiff Nyachira collection demands, seeking for him to pay Defendant almost $5,000.

## V.     FLSA COLLECTIVE ACTION ALLEGATIONS

77.     Plaintiff Peter Nyachira brings Count I, the FLSA claim, as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b), on behalf of himself and on behalf of all other similarly situated individuals.

78.     Pending any modifications necessitated by discovery, the named Plaintiff Nyachira preliminarily defines the collective for which he seeks certification under section 216(b) as follows:

> *All individuals who have attended orientation and/or over-the-road training and/or have done team driving for Prime during the applicable statutory period.*

79.     The FLSA claim may be pursued by those who opt in to this case, pursuant to 29 U.S.C. § 216(b). The number and identity of other plaintiffs yet to opt in and consent to be party plaintiffs may be determined from the records of Defendant, and potential class members may easily and quickly be notified of the pendency of this action through direct mail, electronic mail and text messaging.

80.     These claims meet the requirements for collective action certification under the FLSA. All potential opt-in plaintiffs are similarly situated with respect to the FLSA claims because they all performed work for Prime for which they were not compensated at the full federal minimum wage (and/or for which their wages were not paid free and clear) and all suffered from the same unlawful policies.

## VI.    MISSOURI STATE LAW RULE 23 CLASS ACTION ALLEGATIONS

81.    Plaintiff Peter Nyachira brings Counts II-III as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3), on behalf of himself and the following class of persons:

> *A nationwide opt-out class that includes all individuals who have attended orientation for Prime in Missouri during the applicable statutory period and/or have performed work for Prime for which they have not been adequately compensated.*

82.    Plaintiff is a member of the proposed Class.

83.    The Missouri state law claims, if certified for class-wide treatment, may be pursued by all similarly situated persons who do not opt out of the Class.

84.    The classes satisfy the numerosity standards in that the Class is expected to number in the thousands.  As a result, joinder of all class members in a single action is impracticable. Each of the class members is, however, readily identifiable using objective criteria from the information and records in the possession or control of Defendant. Class members may be informed of the pendency of this class action through direct mail, electronic mail and text messaging.

85.    There are questions of fact and law common to the class that predominate over any questions affecting individual members. In fact, the wrongs suffered and remedies sought by Plaintiff and the other members of the class are identical and premised upon an illegal course of conduct perpetrated by Defendant. The only material difference between the class members' claims is the exact monetary amount to which each member of the class is entitled.   The questions of law and fact common to the class arising from Defendant's actions include, without limitation, the following:

a.    Whether the class members were not paid for all training time;

b.    Whether Defendant paid its employees at least the minimum wage for all hours worked;

12

c. Whether the class members were paid by the mile without regard to the number of hours worked (and were not paid at all for some work);

d. Whether all class members were paid based on 12 or 14 cents per mile or $600-700 a week;

e. Whether Defendant knew or had reason to know its policies and compensation practices were unlawful;

f. Whether Defendant retained a benefit from such unlawful policies and compensation practices;

g. Whether Defendant's payroll records utilized standardized codes and other data from which the class members' claims can be analyzed;

h. Whether the class members each had unlawful deductions taken from their paychecks; and

i. Whether the Class members were paid their wages free and clear.

86. The aforementioned common questions, among others, predominate over any questions affecting individual persons, and a class action is proper as it will achieve and promote consistency, economy, efficiency, fairness, and equity.

87. Plaintiff's claims are typical of those of the class because the class members have been paid pursuant to the same compensation structure and were subject to the same or similar unlawful practices as the Plaintiff.

88. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class he seeks to represent. Plaintiff has suffered economic injury in his individual capacity from the practices complained of and is ready, willing and able to serve as class representative. The interests of the members of the class will be fairly

and adequately protected by Plaintiff and undersigned counsel, who have experience in employment and class action lawsuits. Neither Plaintiff nor his counsel have any interest that might cause them not to vigorously pursue this action.

89.     Certification of the class under Federal Rule 23(b)(3) as defined above is appropriate in that Plaintiff and the class members seek monetary damages and common questions predominate over any individual questions. Further, there will be no difficulty in the management of this litigation as a class action because this is an uncomplicated case of unpaid wages that should be mathematically ascertainable from business records of Defendant, and the class claims are typical of those pursued by victims of these violations.

90.     A class action is the appropriate method for the fair and efficient adjudication of this controversy.  Defendant has acted or refused to act on grounds generally applicable to the class.  The presentation of separate actions by individual class members would create a risk of inconsistent and varying results, risk the establishment of incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of class members to protect their interests.

91.     Maintenance of this action as a class action is a fair and efficient method to resolve this controversy. It would be impracticable and undesirable for each member of the class who suffered harm to bring a separate action.  Furthermore, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a class action can determine the rights of all class members in conformity with the interests of efficiency and judicial economy.

## VII.   CAUSES OF ACTION

### COUNT I: VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938

91.     Plaintiff incorporates by reference the statements and allegations contained in the above paragraphs as though more fully and completely set forth herein.

92.     At all times material herein, Plaintiff and all other similarly situated employees have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

93.     The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 206(a).

94.     The FLSA requires each covered employer, such as Defendant, to compensate all non-exempt employees at the federal minimum wage for services performed.

95.     The FLSA also requires each covered employer, such as Defendant, to pay all wages free and clear.

96.     Defendant is subject to the minimum wage requirements of the FLSA because it is an enterprise engaged in interstate commerce and its employees are engaged in commerce.

97.     Plaintiff brings this Complaint pursuant 29 U.S.C. § 216(b), on behalf of all persons who were, are, or will be employed by the Defendant as similarly situated employees within three years from the commencement of this action who have not been compensated for their time, and/or who have not been compensated at the proper minimum wage for all services performed.

98.     Defendant violated the FLSA by failing to compensate Plaintiff, and other similarly situated employees, at the minimum wage.

99.     Upon information and belief, Plaintiff Nyachira, and similarly situated truck drivers, regularly received less than the federal minimum wage for all hours worked during numerous workweeks.

100.    Defendant also violated the FLSA by failing to compensate Plaintiff, and other similarly situated truck drivers, their wages free and clear.

101.    Upon information and belief, in the course of perpetrating these unlawful practices, Defendant has also willfully failed to keep accurate records of all hours worked by its employees.

102.    Plaintiff and all similarly situated truck drivers are victims of a uniform and company-wide compensation policy. Upon information and belief, this uniform policy, in violation of the FLSA, has been applied to all truck drivers employed by Defendant during the last three years.

103.    Plaintiff and all similarly situated truck drivers are entitled to damages equal to the mandated minimum wage within the three years preceding the filing of this Complaint, plus periods of equitable tolling, because Defendant acted willfully and knew, or showed reckless disregard of whether its conduct was prohibited by the FLSA.

104.    Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiff and other similarly situated truck drivers are entitled to recover an award of liquidated damages in an amount equal to the amount of minimum wages described pursuant to Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find Defendant did not act willfully in failing to pay minimum wages, Plaintiffs and all similarly situated truck drivers are entitled to an award of prejudgment interest at the applicable legal rate.

105.    As a result of the aforesaid willful violations of the FLSA, wages have been

unlawfully withheld by Defendant from Plaintiff and all similarly situated truck drivers. Accordingly, Defendant is liable pursuant to 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, Plaintiff and all similarly situated truck drivers demand judgment against Defendant and pray for: (1) designation of this action as a collective action on behalf of all similarly situated employees and prompt issuance of notice to all similarly situated employees (the FLSA class), apprising them of the pendency of this action; (2) compensatory damages; (3) liquidated damages; (4) attorneys' fees and costs as allowed by Section 16(b) of the FLSA; (5) pre-judgment and post-judgment interest as provided by law; and (6) such other relief as the Court deems fair and equitable.

## COUNT II: VIOLATIONS OF MISSOURI MINIMUM WAGE LAW, MO. REV. STAT. § 290.500, *et seq.*

106.    Plaintiff incorporates by reference the statements and allegations contained in the above paragraphs as though more fully and completely set forth herein.

107.    At all times material herein, Plaintiff and all other similarly situated employees have been entitled to the rights, protections, and benefits provided under the Missouri Minimum Wage Law, Mo. Rev. Stat. § 290.500, *et seq.*

108.    Defendant, in violation of Mo. Rev. Stat. § 290.502, failed to compensate Plaintiff and those similarly situated the statutory minimum wage for each hour worked.

109.    These employees are similarly situated in that they are all subject to Defendant's identical compensation policies and plan that fails to lawfully compensate them.

110.    This Complaint is brought and maintained as a class action pursuant to Federal Rule 23(b)(3) for all state law claims asserted by the Plaintiff because his claims are similar to the claims

of the class members.

111.     The names and addresses of the class members are available from Defendant.  The Defendant failed to compensate Plaintiff and the class members for all training and team driving at the proper rate of pay, and therefore, Defendant has violated, and continues to violate, the Missouri wage laws, Mo. Rev. Stat. 290.500, *et. seq.*

112.     The Plaintiff, on behalf of himself and all similarly situated employees of Defendant who compose the class, seeks damages in the amount of all respective unpaid minimum wages plus liquidated damages, as provided by the MMWL and such to legal and equitable relief as the Court deems just and proper.

113.     The Plaintiff, on behalf of himself and all similarly situated employees of Defendant who compose the class, seeks recovery of all attorney fees, costs, and expenses of this action, to be paid by Defendant, as provided by Mo. Rev. Stat. 290.500, *et. seq.*

WHEREFORE, Plaintiff, on behalf of himself and all proposed class members, demands judgment against Defendant and prays for: (1) designation of this action as an action on behalf of the proposed class members and prompt issuance of notice to all class members (the Missouri Wage Law class), apprising them of the pendency of this action; (2) designation of Plaintiff as Representative Plaintiff, acting for and on behalf of the class members; (3) compensatory damages; (4) liquidated damages; (5) attorneys' fees and costs; (6) pre-judgment and post-judgment interest as provided by law; and (7) such other relief as the Court deems fair and equitable.

## COUNT III: QUANTUM MERUIT/UNJUST ENRICHMENT

115.     Plaintiff incorporates by reference the statements and allegations contained in the above paragraphs as though more fully and completely set forth herein.

116.     Defendant has been and is being unjustly enriched at the expense of Plaintiff and

other similarly situated truck drivers by making deficient payments for work performed by Plaintiff and other similarly situated truck drivers. Defendant has been and is being enriched at the expense of Plaintiff and other similarly situated truck drivers because Plaintiff and others were not properly compensated for their work.

117. Defendant has been and is being unjustly enriched by accelerating the Class members' debts and charging the Class members for unearned training program costs and fees and that are in excess of the true costs to Defendant. It would be unjust to permit Defendant to be enriched by accelerating the Class members' debts and charging the Class members for unearned training program costs and fees and that are in excess of the true costs to Defendant.

118. Defendant intentionally refused to pay Plaintiff and other similarly situated employees at the proper rate for all hours worked. Defendant knows or should know the proper rate of pay for Plaintiff and other similarly situated employees. Such wrongful conduct demonstrates bad faith on the part of Defendant.

119. It would be unjust to permit Defendant to retain the benefits from the unpaid work performed by Plaintiff and other similarly situated truck drivers.

WHEREFORE, Plaintiff, on behalf of himself and all proposed class members, demands judgment against Defendant and prays for: (1) designation of this action as an action on behalf of the proposed class members and prompt issuance of notice to all class members (the Quantum Meruit / Unjust Enrichment Class), apprising them of the pendency of this action; (2) designation of Plaintiff as Representative Plaintiff, acting for and on behalf of the class members; (3) compensatory damages; (4) attorneys' fees and costs; (5) pre-judgment and post-judgment interest as provided by law; and (6) such other relief as the Court deems fair and equitable.

## DEMAND FOR JURY TRIAL

The Plaintiffs demand a jury for all issues so triable.

Date: August 12, 2021

Respectfully Submitted,

**FAIR WORK, P.C.**

*/s/ Hillary Schwab*
Hillary Schwab, (to be admitted *pro hac vice*)
192 South Street, Suite 450
Boston, MA 02111
Tel. (617) 607-3261
Fax. (617) 488-2261
hillary@fairworklaw.com

**HODES LAW FIRM, LLC**

*/s/ Garrett M. Hodes*
Garrett M. Hodes, MO #50221
6 Victory Lane, Suite 6
Liberty, Missouri 64068
(816) 222-4338 (Phone)
(816) 931-1718 (Fax)
garrett@hodeslawfirm.com

**CRIMMINS LAW FIRM, LLC**

*/s/ Matthew R. Crimmins*
Matthew R. Crimmins, MO #53138
Virginia Stevens Crimmins, MO #53139
214 S. Spring Street
Independence, Missouri 64050
Tel: (816) 974-7220
Fax: (855) 974-7020
m.crimmins@crimminslawfirm.com
v.crimmins@crimminslawfirm.com

**ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS**

DocuSign Envelope ID: 71A19E4F-1DFE-4E5B-BF2E-70882F75EFD7

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

**PETER NYACHIRA, on behalf of himself
and all other similarly situated persons,**

**Plaintiffs,**

**vs.**

**NEW PRIME, INC.,**

**Defendant.**

Case No. _____

## <u>CONSENT TO SUE</u>

1. I have attended orientation to work as a truck driver and/or have worked as a truck driver for Defendant.

2. I hereby consent to become a plaintiff in this case in connection with the claims under the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and to be bound by judgment by the court or any settlement or resolution of this lawsuit.

3. I designate Fair Work, P.C., the Hodes Law Firm, LLC, and the Crimmins Law Fir, LLC to represent me for all purposes in this lawsuit.

Signature: _Peter Nyachira_
C682B98D827341D...

Name:  Peter Nyachira

JS 44 (Rev 09/10)

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI

## CIVIL COVER SHEET

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use <u>only</u> in the Western District of Missouri.

**The completed cover sheet must be saved as a pdf document and filed as an attachment to the Complaint or Notice of Removal.**

**Plaintiff(s):**

First Listed Plaintiff:
Peter Nyachira ;
**County of Residence:** Outside This District

**Defendant(s):**

First Listed Defendant:
New Prime, Inc. ;
**County of Residence:** Greene County

**County Where Claim For Relief Arose:** Greene County

**Plaintiff's Attorney(s):**

Garrett M. Hodes (Peter Nyachira)
Hodes Law Firm, LLC
6 Victory Lane, Suite 6
Liberty, Missouri 64068
**Phone:** (816) 222-4338
**Fax:** (816) 931-1718
**Email:** garrett@hodeslawfirm.com

Virginia Stevens Crimmins (Peter Nyachira)
Crimmins Law Firm, LLC
214 S. Spring Street
Independence, Missouri 64050
**Phone:** (816) 974-7220
**Fax:** (855) 974-7020
**Email:** v.crimmins@crimminslawfirm.com

Hillary Schwab (Peter Nyachira)
Fair Work, P.C.
192 South Street, Suite 450
Boston, Massachusetts 02111
**Phone:** (617) 607-3261
**Fax:** (816) 488-2261
**Email:** hillary@fairworklaw.com

Matthew Robert Crimmins (Peter Nyachira)
Crimmins Law Firm, LLC
214 S. Spring Street
Independence, Missouri 64050
**Phone:** (816) 974-7220
**Fax:** (855) 974-7020
**Email:** m.crimmins@crimminslawfirm.com

**Defendant's Attorney(s):**

1/2

**Basis of Jurisdiction:** 3. Federal Question (U.S. not a party)

**Citizenship of Principal Parties** (Diversity Cases Only)

**Plaintiff:** N/A

**Defendant:** N/A

**Origin:** 1. Original Proceeding

**Nature of Suit:** 710 Fair Labor Standards Act

**Cause of Action:** Violations of Fair Labor Standards Act, 29 U.S.C. § 216(b), and Missouri Minimum Wage Law, Mo. Rev. Stat. § 290.527

**Requested in Complaint**

**Class Action:** Class Action Under FRCP23

**Monetary Demand (in Thousands):** In excess of $75,000

**Jury Demand:** Yes

**Related Cases:** Is NOT a refiling of a previously dismissed action

**Signature:** Garrett M. Hodes

**Date:** 8/12/2021

If any of this information is incorrect, please close this window and go back to the Civil Cover Sheet Input form to make the correction and generate the updated JS44. Once corrected, print this form, sign and date it, and submit it with your new civil action.