IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| PETER NYACHIRA, on behalf of himself and all other similarly situated persons,<br><br>Plaintiffs,<br><br>vs.<br><br>NEW PRIME, INC.,<br><br>Defendant. | Case No. 6:21-cv-03211-BP |

**SUGGESTIONS IN SUPPORT OF DEFENDANT NEW PRIME, INC.'S MOTION TO BIFURCATE ISSUES FOR TRIAL**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 1

ARGUMENT ..... 3

I. The Court Should Bifurcate The PSD and TNT Issues ..... 3

A. Classification of PSDs as Trainees or Employees Is A Different Legal Issue Than Alleged Failure To Pay TNTs Minimum Wage, Requiring Different Evidence And Analysis. ..... 3

B. Prime Will Be Prejudiced Absent Bifurcation. ..... 5

C. The Jury Will Be Confused Absent Bifurcation. ..... 7

D. Neither Party Would Be Prejudiced By The Proposed Bifurcation. ..... 8

E. Bifurcation Will Encourage Potential Settlement. ..... 9

II. The Court Should Bifurcate Liability And Damages For The PSD Trial ..... 9

CONCLUSION ..... 11

## TABLE OF AUTHORITIES

**Page**

**Cases**

*ABT Sys., LLC v. Emerson Elec. Co.*,
2013 WL 425399 (E.D. Mo. Feb. 4, 2013)....4

*Baker v. SeaWorld Ent., Inc.*,
2020 WL 241441 (S.D. Cal. Jan. 16, 2020)....1

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada*,
2006 WL 1026992 (E.D. Mo. Apr. 14, 2006)....2

*Beeck v. Aquaslide 'N' Dive Corp.*,
562 F.2d 537 (8th Cir. 1977)....6

*Britt v. Miss. Farm Bureau Cas. Ins. Co.*,
2022 WL 619657 (N.D. Miss. Mar. 2, 2022)....8, 9

*Butler v. Dowd*,
979 F.2d 661 (8th Cir. 1992)....1

*Chapman v. Hiland Partners GP Holdings, LLC*,
2014 WL 12836626 (D.N.D. Jan. 17, 2014)....1

*Crews v. Domino's Pizza Corp.*,
2010 WL 11508359 (C.D. Cal. Mar. 5, 2010)....3

*Datjaratsri v. Domino's Pizza Inc.*,
2008 WL 11339975 (C.D. Cal. Nov. 4, 2008)....3, 9

*Donovan v. Star Bakery, Inc.*,
626 F. Supp. 1208 (D.P.R. 1986)....4

*Dr. John's, Inc. v. City of Sioux City*,
438 F. Supp. 2d 1005 (N.D. Iowa 2006)....4, 10

*Evantigroup, LLC v. Mangia Mobile, LLC*,
2014 WL 1048589 (E.D. Mo. Mar. 14, 2014)....7, 8

*Franklin v. Butterfield*,
2021 WL 8651048 (E.D. Ark. Nov. 24, 2021)....7

*Garcia v. City of Imperial*,
2010 WL 3911457 (S.D. Cal. Oct. 4, 2010)....6

*Helminski v. Ayerst Lab'ys.*,
766 F.2d 208 (6th Cir. 1985)....10

*Intermedics, Inc. v. Cardiac Pacemakers, Inc.*,
1998 WL 35253490 (D. Minn. Feb. 17, 1998), *report and recommendation adopted as modified*, 1998 WL 35253492 (D. Minn. Mar. 31, 1998)....7

## TABLE OF AUTHORITIES

**Page**

*Lee v. Overbey*,
2010 WL 143691 (W.D. Ark. Jan. 8, 2010) ....................2

*Marshall v. Sideris*,
524 F. Supp. 521 (D. Neb. 1981), *rev'd sub nom. on unrelated grounds, Donovan v. Sideris*, 688 F.2d 74 (8th Cir. 1982) ....................4

*Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*,
2001 WL 228427 (D. Minn. Feb. 27, 2001), *aff'd*, 401 F.3d 901 (8th Cir. 2005) ....................5, 10

*Nerland v. Caribou Coffee Co.*,
564 F. Supp. 2d 1010 (D. Minn. 2007) ....................4

*O'Dell v. Hercules, Inc.*,
904 F.2d 1194 (8th Cir. 1990) ....................1, 3

*Panchal Enters. v. State Farm Fire & Cas. Co.*,
2021 WL 1909897 (D. Neb. May 12, 2021) ....................6

*Pioneer Hi-Bred Int'l, Inc. v. Asgrow Seed Co.*,
2000 WL 33363188 (S.D. Iowa May 5, 2000) ....................10

*Plaza-Bonilla v. Cortazzo*,
2009 WL 977297 (E.D. Pa. Apr. 9, 2009) ....................10

*Rezac Livestock Comm'n Co., Inc. v. Pinnacle Bank*,
2019 WL 7116086 (D. Kan. Dec. 23, 2019) ....................1

*RightCHOICE Managed Care, Inc. v. Hosp. Partners, Inc.*,
2021 WL 4236611 (W.D. Mo. Sept. 16, 2021) ....................4

*Seabron v. Am. Fam. Mut. Ins. Co.*,
2014 WL 3859639 (D. Colo. Aug. 6, 2014) ....................8

*Shaughnessy v. Ass'n of Apartment Owners of Moana Pac.*,
2011 WL 97254 (D. Haw. Jan. 12, 2011) ....................9

*Van Orden v. Schaefer*,
2014 WL 7335150 (E.D. Mo. Dec. 19, 2014) ....................9

*Walling v. Portland Terminal Co.*,
330 U.S. 148 (1947) ....................5

### Rules

Fed. R. Civ. P. 42(b) ....................1

### Treatises

9A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 2388 (3d ed.) ....................1

## INTRODUCTION

Plaintiffs challenge two distinct training programs, the unpaid Prime Student Driver ("PSD") program for those preparing to test for a Commercial Drivers' License (or "CDL") and the TNT training program, in which new CDL-holders are paired with a trainer and drive as a team for a period of time. Although both programs exist at Prime, the factual and legal issues are largely distinct. The Court's summary judgment order confirmed this. The order identified two distinct issues for trial: (1) resolution of "disputed issues of material fact" necessary for the Court to decide the legal question of whether PSDs are trainees or employees under the FLSA and MMWL, Dkt. #470 at 5-7; and (2) after "[h]aving concluded" at summary judgment that TNTs "are effectively working 16 hours per day," determining "whether the amount they were paid for those 16 hours equaled or exceeded the minimum wage," *id.* at 13-14. Prime respectfully requests the Court bifurcate these issues for trial.[1]

Under Federal Rule of Civil Procedure 42, the Court may, "[f]or convenience, to avoid prejudice, or to expedite and economize," order a "separate trial of one or more separate issues." Fed. R. Civ. P. 42(b). That decision turns on several case-specific factors, including whether "the issues are clearly distinct," the "prejudice [to] either party," "possibilities for confusion," and "judicial economy." *Butler v. Dowd*, 979 F.2d 661, 678 (8th Cir. 1992); *see O'Dell v. Hercules,*

[1] This motion is timely. A motion to bifurcate "is not subject to any particular time constraint and properly may be made at a pretrial conference." 9A Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 2388 (3d ed.) (collecting cases); *see also Rezac Livestock Comm'n Co., Inc. v. Pinnacle Bank*, 2019 WL 7116086, at *8 (D. Kan. Dec. 23, 2019) (decision to bifurcate made "[a]s discussed at the pretrial conference"); *Baker v. SeaWorld Ent., Inc.*, 2020 WL 241441, at *1 (S.D. Cal. Jan. 16, 2020) (court tentatively granted motion to bifurcate prior to pretrial conference); *cf. Chapman v. Hiland Partners GP Holdings, LLC*, 2014 WL 12836626, at *3 (D.N.D. Jan. 17, 2014) (deferring bifurcation question until an "appropriate time"—that is, after the court "ruled on any summary judgment motions" and "the final posture of the case becomes clear").

*Inc.*, 904 F.2d 1194, 1201-02 (8th Cir. 1990). Also relevant to the Court's analysis is "the effect of bifurcation on the potential for settlement." *Lee v. Overbey*, 2010 WL 143691, at *1 (W.D. Ark. Jan. 8, 2010); *see also Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada*, 2006 WL 1026992, at *2 (E.D. Mo. Apr. 14, 2006).

Bifurcation of the PSD and TNT claims is warranted here. Classification of PSDs is a distinct issue from TNT alleged underpayment, and the parties' evidence on each—the nature of the PSD program versus TNTs' wages owed, if any—are significantly different. Bifurcation will eliminate the prejudice to Prime and jury confusion that would result from the simultaneous presentation of evidence about two different FLSA claims impacting different groups of Plaintiffs. Bifurcation will streamline the presentation of evidence; Prime's view is that, absent bifurcation, it will need to submit significantly more evidence in order to ensure jurors are adequately distinguishing between "B as in boy" seats and "D as in dog" seats. Moreover, no party would be prejudiced by bifurcation. In fact, bifurcation may expedite the resolution of Plaintiffs' claims in still more ways; narrowing the issues for the September 9 trial is likely to facilitate the parties' settlement discussions during and after the August 29 court-ordered mediation.

The Court should also bifurcate the PSD trial into liability and damages phases. Bifurcation is particularly appropriate here given the nature of the issues to be resolved as to PSD. The Court has previewed that it will make the ultimate decision as to whether PSDs are "employees" based on the jury's fact-finding. As a result, any question of potential damages will not be ripe for any decision-maker's resolution until *after* a jury evaluates the facts on PSD. The Court will need time to reach its decision on the ultimate legal question before any proceeding (if necessary) on damages. Furthermore, consideration of the possibility of damages alongside the threshold factual questions will confuse the jury and prejudice Prime. Thus, for a variety of

reasons, it is also imperative that the Court bifurcate the PSD trial into liability and damages phases.

In order to further streamline the bifurcated proceedings, and without waiver of its appellate rights as to prior rulings, Prime is prepared to stipulate to a bench trial in Kansas City on the question of damages for the TNT phase and—should it ever become necessary—the question of damages for the PSD phase. The issues to be decided by the jury would be limited to the factual questions regarding whether the student drivers in PSD are trainees or employees.

## ARGUMENT

### I. THE COURT SHOULD BIFURCATE THE PSD AND TNT ISSUES

#### A. Classification of PSDs as Trainees or Employees Is A Different Legal Issue Than Alleged Failure To Pay TNTs Minimum Wage, Requiring Different Evidence And Analysis.

As here, "where the issues in a case are clearly separable," bifurcation is appropriate. *O'Dell*, 904 F.2d at 1202. An alleged misclassification claim is fundamentally different than a claim for failure to pay minimum wage to an undisputedly covered employee, in part because the former is a gating question which requires an evaluation of whether, as a matter of law, Plaintiffs were covered by the FLSA when they were PSDs. As a result, courts routinely bifurcate legal FLSA misclassification questions from the fact-bound analysis of minimum-wage payment. *See, e.g.*, *Datjaratsri v. Domino's Pizza Inc.*, 2008 WL 11339975, at *2 (C.D. Cal. Nov. 4, 2008) ("bifurcat[ing] the issue of misclassification [from] evidence on the alleged failure to pay overtime, provide rest and meal breaks, and waiting time penalties" and identifying "the plaintiff's classification" claim as "the critical issue in the case"); *Crews v. Domino's Pizza Corp.*, 2010 WL 11508359, at *3 (C.D. Cal. Mar. 5, 2010) (granting bifurcation between misclassification and liability issues in FLSA case, noting that this was "the most expeditious means of trying th[e] case" because "[i]f Defendants prevail" on the misclassification question "it will dispense with the need

for any further testimony or evidence"); *Marshall v. Sideris*, 524 F. Supp. 521, 524 (D. Neb. 1981) (holding a separate trial on the threshold issue of whether the FLSA applied), *rev'd sub nom. on unrelated grounds, Donovan v. Sideris*, 688 F.2d 74 (8th Cir. 1982); *Donovan v. Star Bakery, Inc.*, 626 F. Supp. 1208, 1210 (D.P.R. 1986) (bifurcating the "issue of enterprise coverage under the FLSA" from "the issue of liability"); *cf. Nerland v. Caribou Coffee Co.*, 564 F. Supp. 2d 1010, 1025 (D. Minn. 2007) ("To promote the manageability of the collective action, the undersigned recommends a bifurcation of the case into a liability stage, where the parties first address the propriety of Caribou's blanket application of the executive exemption to its store managers, followed by a damages phase, if necessary, where the parties consider the impact of a misclassification on individual plaintiffs.").

Bifurcation is all the more appropriate given the Court's statements about its role in deciding the ultimate legal issue. Courts frequently bifurcate equitable issues that are the province of the jury from legal ones that are for the court alone. *See, e.g.*, *RightCHOICE Managed Care, Inc. v. Hosp. Partners, Inc.*, 2021 WL 4236611, at *2 (W.D. Mo. Sept. 16, 2021) (ordering that contract claims should be tried to a jury while the ERISA claims should be tried to the court); *ABT Sys., LLC v. Emerson Elec. Co.*, 2013 WL 425399, at *2 (E.D. Mo. Feb. 4, 2013) (bifurcating patent invalidity issues that were for the jury from the issue of inequitable conduct that was for the Court); *Dr. John's, Inc. v. City of Sioux City*, 438 F. Supp. 2d 1005, 1041 (N.D. Iowa 2006) (bifurcating "issues of fact on 'constitutional' issues, for the court to determine, [and] any 'damages' issues" for the jury).

Fact disputes underlying PSD classification are entirely distinct from the issue of whether TNTs were paid minimum wage for 16 hours a day, and the evidence is also different. On the PSD claim, the jury will hear testimony about different aspects of the PSD program to resolve fact

disputes related to the factors identified in *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947), and distilled in the Department of Labor's *Field Operations Handbook*. Dkt. #470 at 4-5. They will therefore consider questions such as whether the PSD program is similar to a vocational CDL program, whether the PSD program benefits trainees, and whether Prime derives an immediate advantage from operating the program. The parties' prior summary judgment briefing makes clear that these factual questions are distinct from any evidence about the TNT program, or about Plaintiffs' sought damages related to that claim. *Compare* Dkt. #392 ¶¶ 30-108, 165-68 (Prime's statement of facts related to PSD) *and* Dkt. #395 ¶¶ 2-4, 10-195 (Plaintiffs' statement of facts related to PSD) *with* Dkt. #392 ¶¶ 109-64 (Prime's statement of facts related to TNT) *and* Dkt. #395 ¶¶ 5-9, 196-288 (Plaintiffs' statement of facts related to TNT). Conversely, the factfinder responsible for deciding whether TNTs were paid minimum wage for 16 hours a day will hear evidence only about two different expert damages models. The Court has already resolved the overarching question of what it believes are "hours worked" for purposes of TNT, and no testimony or other evidence about the PSD program is relevant to the process of calculating any TNT damages. Dkt. #470 at 13-14, 16-17. These issues are therefore well-suited to bifurcation.

### B. Prime Will Be Prejudiced Absent Bifurcation.

Bifurcating PSD and TNT issues would also avoid prejudice to Prime based on the simultaneous presentation to the jury of PSD and TNT issues. Courts routinely recognize the risk of prejudice to a party as a dispositive factor supporting bifurcation of issues. *See, e.g.*, *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 2001 WL 228427, at *5 (D. Minn. Feb. 27, 2001) ("bifurcation would protect the Defendant from unfair prejudice," in part because "[t]he extent of the damages based upon the assertions of the Plaintiffs is potentially enormous, and this alone creates potential for great prejudice against the Defendant"; "[c]onsideration of prejudice and bifurcation commonly arises where evidence . . . could unfairly invoke the sympathies of the trier

of fact, thereby impacting the determination of liability"), *aff'd*, 401 F.3d 901 (8th Cir. 2005); *see also Beeck v. Aquaslide 'N' Dive Corp.*, 562 F.2d 537, 542 (8th Cir. 1977) (affirming district court's order to bifurcate liability from damages when damages evidence would have taken up several days of trial, and evidence of injuries may have been prejudicial to defense of non-manufacture). And that is especially true where, as here, the issues to be bifurcated are significantly different. *See Garcia v. City of Imperial*, 2010 WL 3911457, at *1 (S.D. Cal. Oct. 4, 2010) (where one "aspect of the case involve[d] different legal issues and different evidence, it ma[de] sense to bifurcate the trial to minimize the risk of confusion and prejudice.")

It will be immensely prejudicial to Prime if the jury is asked to simultaneously answer specific interrogatories concerning fact disputes about the PSD program while also determining the damages owed (if any) based upon the Court's ruling that Prime must pay TNTs for 16 hours a day while they are on trips. That Plaintiffs have raised a second FLSA claim against Prime as to a different set of individuals may suggest to the jury a potential disregard for wage and hour compliance—that the existence of two claims instead of just one makes liability on both more likely. Evidence and argument from Plaintiffs that Prime failed to pay minimum wage to TNT drivers will therefore "taint" the jury's "objectivity" as to PSD liability, prompting answers to the specific interrogatories on PSD fact disputes based not on the facts presented but on mere assumptions. *Panchal Enters. v. State Farm Fire & Cas. Co.*, 2021 WL 1909897, at *2 (D. Neb. May 12, 2021) (bifurcating breach of contract and bad faith claims and opining that "evidence relevant only to [the plaintiff's] bad faith claim might taint a juries' [sic] objectivity as to the breach-of-contract claim to the point that an instruction would not cure it"). This impact on the jury's objectivity as to the PSD program will prejudice Prime.

### C. The Jury Will Be Confused Absent Bifurcation.

Bifurcation would also prevent jury confusion. Courts have bifurcated for this very reason in similarly complex, multi-issue cases. *See, e.g.*, *Evantigroup, LLC v. Mangia Mobile, LLC*, 2014 WL 1048589, at *1-2 (E.D. Mo. Mar. 14, 2014) (recognizing pretrial that "the factual inquiry in this case ha[d] become far more expansive than anyone could have reasonably expected, given the limited nature of the plaintiff's claims," and bifurcating plaintiff's different theories of liability to "significantly streamline the presentation of evidence" and to "allow the jurors to focus on the main issues in th[e] case," which were most "easily . . . decided without consideration of" other issues); *Intermedics, Inc. v. Cardiac Pacemakers, Inc.*, 1998 WL 35253490, at *16 (D. Minn. Feb. 17, 1998), *report and recommendation adopted as modified*, 1998 WL 35253492 (D. Minn. Mar. 31, 1998) (bifurcating issues out of "fear that trying all of the issues at once may, unnecessarily, clutter the record, and unduly complicate the Jury's task . . . result[ing] in the Jury's consideration of evidence which is appropriate as to one issue, but not as to another"); *Franklin v. Butterfield*, 2021 WL 8651048, at *6 (E.D. Ark. Nov. 24, 2021) (bifurcating probate issue from the question whether the defendant breached a standard of care because the court perceived "a high risk of confusion to the jury if both claims are presented at the same time").

Absent bifurcation, jurors would be asked to resolve disputes of fact related to the classification of one class of Plaintiffs at the same time that they are being asked to decide whether there was a failure to pay minimum wage as to another class of Plaintiffs. Given the complexity of the issues in this case and the voluminous factual record—as demonstrated, for example, by the parties' statements of facts in summary judgment briefing, as well as by the involvement of multiple experts on each side—the risk of jury confusion is high. Indeed, that the presentation of evidence relevant to the PSD claim and to the question of TNT damages, although wholly distinct in substance, would in some cases be offered by the same witness would only enhance the risk of

such confusion. Bifurcation would permit the jury to focus on the relevant facts of Plaintiffs' PSD claim and prevent confusion and verdicts on improper bases.

**D. Neither Party Would Be Prejudiced By The Proposed Bifurcation.**

Neither party would be disadvantaged if the Court bifurcates PSD classification and TNT minimum wage issues. Under similar circumstances, courts routinely hold that bifurcation imposes no prejudice on the parties involved and actually streamlines trial (and with it, promotes judicial economy). *See, e.g.*, *Britt v. Miss. Farm Bureau Cas. Ins. Co.*, 2022 WL 619657, at *1 (N.D. Miss. Mar. 2, 2022) ("[b]ifurcating the trial into an initial liability phase, limited to the threshold question of whether the Plaintiffs were employees or independent contractors, and a second defenses/damages phase, if necessary" would "expedite and economize" trial and would not "prejudice" any party); *Evantigroup, LLC*, 2014 WL 1048589, at *2 (bifurcation would minimize confusion of issues and streamline the presentation of evidence, but not prejudice the parties, as it would "simply require [them] in the first instance to present evidence relevant to the [central] issue" before reaching other theories of liability).

Nor does bifurcation pose a risk of creating inconsistent results. *See Seabron v. Am. Fam. Mut. Ins. Co.*, 2014 WL 3859639, at *2 (D. Colo. Aug. 6, 2014) (no prejudice from bifurcation because different verdicts in each trial, should they occur, "would not be because the various juries considered the same facts and arrived at different results; rather, the juries would be considering the different facts present in each case"). A verdict resolving fact disputes underlying the PSD classification has nothing to do with whether TNTs were paid minimum wage for 16 hours a day.

Furthermore, Plaintiffs' expert witnesses would not need to appear at two different trials. Dr. Viscelli's opinions relate exclusively to PSD (and not to damages), and Dr. Fox's opinion is limited to damages on PSD and TNT. As a matter of law, the PSD damages should not be tried

unless the Court first resolves the legal question of their status as trainees or employees. *See infra* at Section II.

### E. Bifurcation Will Encourage Potential Settlement.

Finally, bifurcation is encouraged when it serves to facilitate settlement of one or more bifurcated issues, thus "serv[ing] judicial economy." *Van Orden v. Schaefer*, 2014 WL 7335150, at *1 (E.D. Mo. Dec. 19, 2014). The Court has already ordered the parties to mediate ahead of trial, recognizing that some issues may be ripe for resolution. Dkt. #468. And bifurcation would enable the parties to dedicate resources and time to negotiate such a settlement rather than having to simultaneously prepare both PSD and TNT issues for the September 9 trial. *See Shaughnessy v. Ass'n of Apartment Owners of Moana Pac.*, 2011 WL 97254, at *3 (D. Haw. Jan. 12, 2011) ("bifurcating Plaintiff's . . . claims" would "facilitate a settlement" in part because avoiding a trial on additional issues would "reduce . . . anticipated defense expenses").

## II. THE COURT SHOULD BIFURCATE LIABILITY AND DAMAGES FOR THE PSD TRIAL

The Court should also bifurcate the PSD trial into liability and damages phases.[2] As illustrated above, *see* Section I.A *supra*, bifurcation of FLSA misclassification liability and (if needed) the resulting damages into distinct stages is a common means to streamline issues for trial and to "eliminate the need to consider [potentially unnecessary] evidence." *Datjaratsri*, 2008 WL 11339975, at *2; *see also Britt*, 2022 WL 619657, at *1 ("[b]ifurcating the trial into an initial liability phase, limited to the threshold question of whether the Plaintiffs were employees or independent contractors, and a second defenses/damages phase, if necessary" will "expedite and

2 For the avoidance of doubt, Prime uses "liability" here to mean resolution of all "disputed issues of material fact" necessary for the Court to decide the legal question of whether PSDs are trainees or employees under the FLSA and MMWL. Dkt. #470 at 5-7. Prime's proposal is to bifurcate resolution of these disputed issues of material fact from all other issues remaining in the PSD case.

economize" trial and "encourage judicial efficiency"). And as with the PSD-TNT bifurcation, the evidence presented on PSD damages, if any, would be limited to damages models, wholly unrelated to the presentation of facts about the nature of the PSD program. "Bifurcation of liability and damages . . . is appropriate [because t]he issue of damages is discrete, and can easily and efficiently be presented separately [with] no duplicate issues to be decided." *Pioneer Hi-Bred Int'l, Inc. v. Asgrow Seed Co.*, 2000 WL 33363188, at *3 (S.D. Iowa May 5, 2000).

Relatedly, and of particular concern, is the well-known risk of prejudice to a party when evidence relevant to the calculation of damages is presented to a factfinder before any determination on liability. *See Helminski v. Ayerst Lab'ys.*, 766 F.2d 208, 212 (6th Cir. 1985) ("Bifurcation of proceedings into separate trials concerning liability and damages is appropriate when . . . the evidence relevant to the damages issue could have a prejudicial impact upon the jury's liability determination." (cleaned up)); *Dr. John's, Inc.*, 438 F. Supp. 2d at 1041 (trial of liability and damages issues together "is potentially confusing and prejudicial"); *Plaza-Bonilla v. Cortazzo*, 2009 WL 977297, at *3 (E.D. Pa. Apr. 9, 2009) (evidence that is "highly probative of Plaintiff's damages" but that "has the potential to unduly prejudice the Plaintiff with respect to Defendants' liability . . . provide[s] a basis for bifurcation"). These concerns squarely apply here, as Prime will be prejudiced if the jury is required to hear evidence about PSD damages *before* the Court has determined as a matter of law whether Prime misclassified PSDs. As in *Marvin Lumber & Cedar Co.*, the "extent of the damages based upon" Plaintiffs' PSD claims "alone creates potential for great prejudice" in responding to the Court's specific interrogatories about the PSD program. 2001 WL 228427, at *5.

Practical concerns also weigh in favor of bifurcation. Absent bifurcation, the jury would hear evidence on both the PSD program and damages models simultaneously, creating confusion.

But more challenging yet would be how to proceed after the close of evidence. The Court likely would need the jury to answer specific interrogatories to resolve factual disputes relevant to the PSD classification. After the jury renders its verdict, the Court presumably would need to pause trial for it to weigh the jury's specific factual findings and render a legal decision on the PSD classification issue. Should the Court find in Plaintiffs' favor, the jury would then need to deliberate on the amount of damages, long after it had heard evidence related to the damages models. If, instead, the Court were to find in Prime's favor on PSD classification, there would be no need for the jury to do anything else at all (rendering moot all of the evidence about competing damages models the jury heard during the trial).

Bifurcation resolves all of these practical complications. It will permit the parties to put on only that evidence relevant to the factfinder at each stage, minimizing confusion and streamlining the process.

**CONCLUSION**

For the foregoing reasons, the Court should bifurcate the PSD and TNT issues. The Court should also bifurcate the PSD trial into liability and damages phases. As stated in the introduction, and without waiver of its appellate rights as to prior rulings, Prime is prepared to stipulate to a bench trial in Kansas City on the question of damages for the TNT phase and—should it ever become necessary—the question of damages for the PSD phase. The issues to be decided by the jury would be limited to the factual questions regarding whether the student drivers in PSD are trainees or employees and, in Prime's view, would take five to six court days. The questions of damages would take one-and-a-half to two court days depending on the scope of the issues to be resolved.

Dated: August 26, 2024	Respectfully submitted,

*s/Michele L. Maryott*
MICHELE L. MARYOTT (*pro hac vice*)
JESSICA M. PEARIGEN (*pro hac vice*)
JORDAN JOHNSON (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612
Telephone: 949-451-3945
Facsimile: 949-475-4668
mmaryott@gibsondunn.com
jpearigen@gibsondunn.com
jjohnson@gibsondunn.com

AMANDA C. MACHIN (*pro hac vice*)
THOMAS J. MCCORMAC IV (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
Telephone: 202-887-3705
Facsimile: 202-530-4244
amachin@gibsondunn.com
tmccormac@gibsondunn.com

KATHLEEN M. NEMECHEK
JOCELYN A. VILLANUEVA
STEPHEN M. BLEDSOE
TIM S. MILLMAN
BERKOWITZ OLIVER, LLP
2600 Grant Boulevard, Suite 1200
Kansas City, MO 64108
Telephone: 816-561-7007
Facsimile: 816-561-1888
knemechek@berkowitzoliver.com
jvillanueva@berkowitzoliver.com
sbledsoe@berkowitzoliver.com
tmillman@berkowitzoliver.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this the 26th day of August, 2024, I electronically filed the above and foregoing document via the Court's CM/ECF system, which will send notification of said filing to all counsel of record.

*/s/Michele L. Maryott*
Michele L. Maryott