IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

**PETER NYACHIRA,** on behalf of himself and all other similarly situated persons,

Plaintiffs,

v.

**NEW PRIME, INC.,**

Defendant.

Case No. 6:21-cv-03211-BP

**PLAINTIFFS'** *OMNIBUS* **MOTION IN LIMINE FOR TRIAL OF D SEAT EMPLOYMENT STATUS AND SUGGESTIONS IN SUPPORT THEREOF**

Plaintiffs hereby move for rulings in limine by this Court on issues relevant to the trial on D seat driver employment status. First, Plaintiffs request that the Court preclude Defendant New Prime, Inc. ("Prime") from arguing or suggesting that D seat drivers are not working while they are "under dispatch." Second, Plaintiffs request that the Court preclude Prime from presenting evidence or argument relating to any alleged Department of Labor investigation or findings or arguments that the Department of Labor has ruled on the merits of Plaintiffs' claims. Third, Plaintiffs request that the Court preclude evidence relating to drivers' driving records and criminal histories.

**ARGUMENT**

"[I]t is in everyone's interests . . . to resolve as many issues before trial as possible." *S & H Farm Supply, Inc. v. Bad Boy, Inc.*, 18-03413-CV-S-BP, 2020 WL 8373428, at 1 (W.D. Mo. Sept. 4, 2020). There are several purposes for motions in limine, including: identifying potential and forecasted evidence that is or may be disputed, so that the Court can rule on and settle these disputes in advance of the trial; streamlining trial and avoiding unnecessary interruptions and

delays for conferences to address evidentiary issues; and preventing distractions and inadmissible or prejudicial evidence from being inadvertently presented to the jury and avoid potential error. *See also, e.g., Grant v. CRST Expedited, Inc.*, 1:18-CV-433, 2021 WL 2101741, at \*1 (E.D. Tex. Apr. 7, 2021); *Genosource, LLC v. SECURA Ins.*, 21-CV-86 CJW-KEM, 2023 WL 4700657, at \*4 (N.D. Iowa Mar. 13, 2023); *Smith v. Hy-Vee, Inc.*, 622 F.3d 904, 910 (8th Cir. 2010); *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002). "District courts have broad discretion when ruling on motions *in limine*." *Advanced Physical Therapy, LLC v. Apex Physical Therapy, LLC*, 6:20-CV-03043-RK, 2022 WL 18584768, at \*1 (W.D. Mo. July 26, 2022).

I.   **THE COURT SHOULD PRECLUDE ARGUMENT OR SUGGESTION THAT DRIVERS ARE NOT WORKING WHILE "UNDER DISPATCH."**

This Court held as a legal matter that "the entire time a driver is under dispatch is compensable" in its August 21, 2024, Order on the Parties' Summary Judgment Motions. ECF Doc. 470 at 8. The Court reviewed "statutes, regulations, and judicial decisions addressing what constitutes 'work' (and hence is compensable time) under the FLSA" to answer the question of whether "time drivers are required (due to Defendant's direction or necessity) to be on or near the truck while not on duty" satisfies the definition. *Id.* at 10. To the extent that D seat drivers are found to be employees, this legal conclusion should apply with full force to their time spent "under dispatch," and the Court should preclude any argument or suggestion to the contrary.

Plaintiffs intend to introduce evidence establishing that D seat drivers in Prime's PSD program who hauled freight for Prime, including on overnight trips, were subject to the same conditions as B and C seat drivers. *E.g.,* Brown Tr. 55:9-20. They were necessarily confined to the moving truck on these trips, even when not driving, and they and the A seat drivers were subject to Prime's regulations. Consequently, just as much as B and C seat drivers, D seat drivers

"[w]hile in transit, . . . must be in the truck—literally, in the job site. While in the truck they are not free to do whatever they want; their actions are constrained by the fact they must be in the truck's passenger seat or sleeper berth. Even when the truck is not moving, the drivers are responsible for it and its contents, and are expected to remain near the truck." Doc. 470 at 11. While the trial will address the question of whether D seat drivers were employees, the question of whether, if so, they must be paid for time spent under dispatch is one the Court has already answered.

II. **THE COURT SHOULD PRECLUDE EVIDENCE OR ARGUMENT RELATING TO ANY ALLEGED UNITED STATES DEPARTMENT OF LABOR INVESTIGATION OR FINDINGS RELATING TO PRIME'S D SEAT PROGRAM.**

This Court should also preclude Prime from introducing evidence relating to any purported Department of Labor "investigation" into Prime's PSD program and/or any argument that the DOL has made findings or rulings bearing on the merits of the claim here as such evidence lacks foundation, is hearsay, and has no probative value. The document at issue is actually a record of a "conciliation" conducted by the Department of Labor pursuant to 29 C.F.R. § 23.420 ("After receipt of a complaint, the Administrator may seek to resolve the matter through conciliation."). A "conciliation" is not "an investigation. Instead, it is an "informal complaint resolution process for complaints filed with the WHD" that consists primarily of a phone call to the complainant's employer. *See* 86 FR 67126-0, "Increasing the Minimum Wage for Federal Contractors," (Nov. 24. 2021); GAO-09-458T, *Wage and Hour Division's Complaint Intake and Investigative Processes Leave Low Wage Workers Vulnerable To Wage Theft*," U.S. Government Accountability Office (March 25, 2009), at p.2.

Consistent with a conciliation, and not an "investigation," in late 2023, while this case was pending, a DOL investigator apparently spent approximately 2.25 hours over the course of

3

21 days looking into a complaint by a Prime driver. The investigator appears to have spoken only with Prime's General Counsel for information on the PSD program. Prime suggests that the investigator has made a finding and concluded from that call that the driver was not an employee during the PSD program. Neither the resulting document, totaling two pages, nor the evidence of the alleged investigation are admissible here.

For several reasons, this evidence should be excluded from the trial. First, the evidence is so incomplete and lacking any type of a foundation as to be utterly lacking in probative value. All that Prime has produced is a two-page document, heavily redacted, that provides no information at all about the nature or scope of the alleged "investigation" (other than it appears to be the record of a "conciliation," and the investigator spent about two hours working on it). Significantly, the DOL's work on the matter appears to have depended solely on representations from Prime's General Counsel. Additionally, Prime did not produce any additional information or documentation relating to this document, despite undoubtedly having such information, as it noted in its summary judgment motion that "the Department of Labor . . . reviewed Prime's training program and associated documentation." Def.'s SIS of S.J. (ECF Doc. 392), ¶ 166. Because of its incompleteness and because of Prime's refusal to produce information that would give the document necessary context, this evidence should be excluded. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").[1]

---

[1] Plaintiffs also sought discovery on other investigations related to unpaid wages, and Defendant's corporate representative could not respond. *See* Third Amended Rule 30(b)(6) Deposition Notice (doc. 330) at Exhibit A, Topic 30; *see also* Doc. 431 at Exhibit 54 (Deposition transcript of Defendant's Corporate Representative at 174:1-175:3) (failing to identify any documents or information that was provided to or reviewed by the DOL).

Second, the DOL document addresses questions that are for the Court in this case. In similar circumstances, courts have concluded that a government report is effectively an improper expert opinion on the ultimate issue. As the District of Nebraska found in addressing a report from a fire marshal, "[g]enerally the court does not admit such reports due to the double hearsay issue *and usual legal opinions found in them.*" *Richardson Int'l (US) Ltd. v. Buhler Inc.*, No. 8:14CV148, 2017 WL 1277814, at *2 (D. Neb. Mar. 31, 2017) (emphasis added); *accord Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 427–28 (8th Cir. 2017) (holding exclusion of audit proper as it was "unfairly prejudicial because it would suggest to the jury that an official fact-finding body had already decided"). That general rule makes eminent sense here—there is no basic foundational information about the identity or background of the investigator, whether his "methodology" included more beyond the telephone call to Prime's General Counsel noted in the report, or anything else to support a conclusion that he or she is somehow qualified to provide opinion testimony under Rule 702 at all, let alone whether he can speak to one of the ultimate legal questions.

Finally, the report is hearsay that does not qualify for an exception under Rule 803. Rule 803(8)'s Public Records exception requires that the "opponent . . . not show that the source of information or other circumstances indicate a lack of trustworthiness." As noted above, the circumstances here point to a pronounced lack of trustworthiness—the investigator spent just over two hours on a conciliation, apparently only calling Prime's General Counsel and taking his representations at face value, before closing the file.

For all of these reasons, any evidence about a DOL investigation into Prime's PSD program should be excluded from trial.

### III. THE COURT SHOULD EXCLUDE EVIDENCE RELATING TO DRIVERS' DRIVING RECORDS AND CRIMINAL HISTORIES.

Defendant should not be permitted to present any evidence or argument concerning the prior (aka before Prime) driving records or criminal histories of the members of the Class or collective, including testifying witnesses. This evidence should not be admitted for three reasons. First, the evidence in question is irrelevant and therefore inadmissible. Significantly, this information about driving records and criminal histories was obtained by Prime in its background checks, and it nevertheless decided to hire these drivers. Prime's decision demonstrates that it did not deem this information to be salient to the drivers' ability to drive for Prime, and it would be contradictory and disingenuous for Prime to claim now that the information is somehow relevant at a trial on the narrow question of whether D seat drivers are Prime employees.

Second, the Federal Rules of Evidence circumscribe the use of criminal history very narrowly. *See* Fed. R. Evid. 404, 609. The limited circumstances in which such information may be admissible are not present here.

Third, in any event, admission of evidence is always subject to the Fed. R. Evid. 403 balancing test. *See Bryant v. City of Hartford*, 585 F. Supp. 3d 179, 190–91 (D. Conn. 2022) ("In reviewing the admissibility of convictions under Rule 609(b), courts must 'make an on-the-record finding based on specific facts and circumstances that the probative value of the evidence substantially outweighs the danger of unfair prejudice.'"). Here, the minimal probative value any information about drivers' driving records and criminal histories from before they started at Prime that was disclosed in a background check and report is vastly outweighed by the prejudice to them of having that old information dredged up at trial. Significantly, introducing evidence of drivers' driving records and criminal histories will also waste trial time, as it will require them to

testify to explain the context and circumstances of old driving and minor criminal infractions, all of which would distract from the main focus of the trial.

## CONCLUSION

Plaintiffs respectfully request that the Court grant these motions in limine.

Dated: October 16, 2024

Respectfully Submitted,

| | |
|---|---|
| **FAIR WORK, P.C.**<br><br>*/s/ Hillary Schwab*<br>Hillary Schwab, admitted pro hac vice<br>Osvaldo Vazquez, admitted pro hac vice<br>192 South Street, Suite 450<br>Boston, MA 02111<br>Tel. (617) 607-3261<br>Fax. (617) 488-2261<br>hillary@fairworklaw.com<br>oz@fairworklaw.com | **HODES LAW FIRM, LLC**<br>Garrett M. Hodes, MO #50221<br>6 Victory Lane, Suite 6<br>Liberty, Missouri 64068<br>(816) 222-4338 (Phone)<br>(816) 931-1718 (Fax)<br>garrett@hodeslawfirm.com<br><br>**CRIMMINS LAW FIRM LLC**<br>Virginia Stevens Crimmins, MO #53139<br>Matthew R. Crimmins, MO #53138<br>214 S. Spring Street<br>Independence, Missouri 64050<br>(816) 974-7220 Telephone<br>(855) 974-7020 Facsimile<br>m.crimmins@crimminslawfirm.com<br>v.crimmins@crimminslawfirm.com |

**COUNSEL FOR PLAINTIFFS, THE COLLECTIVE, AND THE CLASS**

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2024, I electronically filed the above and foregoing document via the Court's CM/ECF system, which will send notification of said filing to all counsel of record

*/s/ Hillary Schwab*
Counsel for Plaintiffs
